**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Robert Reimer and Susan Reimer,
individually and as husband and wife,

Plaintiffs,

v.

City of Crookston and
Crookston Public School District #593,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-370 ADM/RLE

---

Paula M. Jossart, Esq., Yaeger, Jungbauer, Barczak & Vucinovich, PLC, Minneapolis, MN, appeared for and on behalf of Plaintiffs.

Michael T. Rengel, Esq., Pemberton, Sorlie, Rufer & Kershner, P.L.L.P., Fergus Falls, MN, appeared for and on behalf of Defendant Crookston Public School District #593.

John E. Hennen, Esq., League of Minnesota Cities, St. Paul, MN, appeared for and on behalf of Defendant City of Crookston.

---

## I. INTRODUCTION

This matter came before the undersigned United States District Judge on October 17, 2003 for oral argument on the Motions for Partial Summary Judgment of Robert Reimer ("Reimer") and Susan Reimer, individually and as husband and wife, ("Plaintiffs") [Docket No. 103], of Defendant City of Crookston (the "City") [Docket No. 106], and of Defendant Crookston Public School District #593 (the "District") [Docket No. 111]. The City's Motion for Summary Judgment on its Cross-Claim against the District [Docket Nos. 93, 101] was also argued. Plaintiffs seek a ruling that the Minnesota statutory liability limitation on tort damages, raised by the Defendants as an affirmative defense, is not applicable in this case. Defendants

NOV 14 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

both move for a declaration that they have not waived these statutory damage caps, and further that because they acted as a joint enterprise a single limitation applies to them. Alternatively, the City seeks indemnification from the District for any potential liability. For the reasons that follow, Plaintiffs' Motion is denied, the City and the District's Motions for Partial Summary Judgment are denied in part and granted in part, and the City's Motion for Summary Judgment against the District is denied.

## II. BACKGROUND

The facts of this matter, now before the Court for the second time, have been previously set forth in the course of its procedural history and need not be repeated at length for purposes of the present disputes. See Order of 1/16/02 at 2-5 [Docket No. 79]. Plaintiffs' suit stems from a very serious accident in the Crookston swimming pool boiler room in which Reimer suffered severe injuries when a piece of the boiler, a corroded nipple, broke away and released scalding water and chemicals. Reimer, who was inspecting the boiler as part of his work as an employee of a heating and cooling company, was grievously burned over sixty-seven percent of his body. He alleges the District and the City are both liable for his injuries due to their joint ownership and management of the pool. The instant Motions focus on the question of damages in the event of a jury finding of negligence against either or both Defendants.

The Defendants operate the Crookston pool pursuant to a Joint Powers Agreement, which established a Joint Recreation and Education Board ("Joint Board") to oversee pool operations. Rengel Aff. Ex. B § 2. The Joint Board is composed of members appointed by the District and the City and is empowered to institute rules and regulations and perform the functions necessary to effectuate the Joint Powers Agreement. Id. Under the terms of a revised Financial

Responsibility Statement adopted by the Joint Board on June 20, 1996, the District is assigned financial responsibility for maintenance, inspection, cleaning and insurance of the boiler. Id. Ex. C para. 2.

The District owns the pool building and facilities. The City and the District each contribute $40,000 annually to operating the pool. Osborne Dep. at 35 (Rengel Aff. Ex. H). At the time of the accident, Ray Nelson ("Nelson"), a custodian for the District, was the chief boiler operator. Nelson Dep. at 15 (Hennen Aff. 1 Ex. B). Ken Stromberg ("Stromberg"), the Pool Director employed by the Joint Board, was also involved in the operation of the boiler in the course of his duties, including walk-through inspections and at least occasional addition of chemicals at the direction of Nelson. Stromberg Dep. at 19, 23; Nelson Dep. at 203-04 (Hennen Aff. 1 Exs. A, B). Though the City and the District vigorously contest the level of Stromberg's participation in the events leading up to the accident, it is undisputed that he was the first person to notice the leak in the boiler, which he reported to Nelson and Bill Brinkman ("Brinkman"), business manager for the District. Stromberg Dep. at 33-34.

The City and the District each have insurance policies covering injuries for which they are liable. The City obtained its coverage through participation in the League of Minnesota Cities Insurance Trust ("LMCIT"), a self-insurance pool that provides comprehensive municipal liability coverage to the City and other participating political subdivisions. See League of Minnesota Cities policy ("LMCIT Policy"); Tritz Aff. ¶¶ 2, 3 (Hennen Aff. 2 Exs. A, B). The City's LMCIT policy covers claims up to $1,000,000.00 and contains an explicit non-waiver of the monetary limit of liability set forth in Minnesota Statutes Section 466.04. LMCIT Policy at Tab 2; Hennen Aff. 2 Ex. B (Waiver Form). Similarly, the District was insured up to

$1,000,000.00 through the Minnesota School Board Association Insurance Trust ("MSBAIT"), a non-profit self-insurance group created to provide coverage for the members of the contribution pool. See MSBAIT Property and Casualty Plan ("MSBAIT Plan") (Rengel Aff. Ex. D); Sylvester Aff. ¶¶ 3, 6. The MSBAIT policy issued to the District includes the Joint Board as an additional insured, lists the swimming pool as insured property and states that recovery under the policy is subject to the "liability limits imposed by statute." MSBAIT Plan at IP-2 § 3.

## III. DISCUSSION

The court shall order summary judgment if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### A. Cross Motions for Partial Summary Judgment on Plaintiffs' Negligence Claim

#### 1. Plaintiffs' Motion

Plaintiffs move for a declaratory judgment that Defendants' procurement of insurance in an amount greater than the statutory limit of liability resulted in a waiver by both parties of the damages ceiling. Defendants counter that their policies, as part of self-insurance pools, do not effect waiver of the limit on municipality liability. The City further argues that its policy

expressly and repeatedly articulates that the City is not surrendering its statutory liability protections.

It is undisputed that the City, the District and the Joint Board are all municipalities under Minnesota law. See Minn. Stat. § 466.01, subd. 1. Minnesota Statutes Section 466 addresses the tort liability of such political subdivisions, limiting the financial liability of any municipality to $300,000 to any claimant. Id. § 466.04, subd. 1(a)(1). Regarding insurance for potential damages, this statute provides in relevant part:

> The governing body of any municipality may procure insurance against liability of the municipality and its officers, employees, and agents, for damages . . . resulting from its torts . . . . The insurance may provide protection in excess of the limit of liability imposed by section 466.04. . . . The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim. Procurement of commercial insurance, participation in a self-insurance pool pursuant to 471.981, or provision for an individual self-insurance plan . . . shall not constitute a waiver of any governmental immunities or exclusions.

Id. § 466.06. Plaintiffs submit that according to this provision, Defendants' selection of $1,000,000 in insurance coverage constitutes a waiver of the otherwise applicable $300,000 liability limit. Defendants reference section 471.981, which permits a political subdivision "by ordinance or resolution of its governing body [to] self insure against liability . . . for damages resulting from its torts." Further,

> [a] political subdivision may by ordinance or resolution of its governing body extend the coverage of its self insurance to afford protection in excess of any limitations on liability established by law but unless expressly provided in the ordinance or resolution extending the coverage, the statutory limitation on liability shall not be deemed to have been waived.

Id. subd. 1. Two or more self-insuring governmental units may establish a pool to cover the same risks and subject to the same terms as individual self-insurance. Id. subd. 3. "The

establishment of a pool shall not increase the liability limits of any member of the pool above the limits established by law for that governmental unit." Id.

Plaintiffs contend Defendants are not self-insured pursuant to section 471.89 because neither the City nor the District has proffered an ordinance or resolution establishing that it elects to self-insure, or any bylaws governing the operation of the purported self-insurance pools.

Defendants each submit sworn testimony stating that they procured insurance through self-insurance pools created pursuant to the above-cited statutory authority. Peter Tritz, the Administrator of the League of Minnesota Cities Insurance Trust, explains in his affidavit that LMCIT is "a self-insurance pool organized pursuant to Minn. Stat. § 471.98, subd. 3," limited in membership to political subdivisions such as the City. Tritz Aff. ¶¶ 2, 3. Likewise, MSBAIT's Director of Insurance and Management states that MSBAIT was established by the Minnesota School Boards Association as a self-insurance organization and that the District's policy is a self-insurance plan funded by the aggregate contributions of MSBAIT participants. Sylvester Aff. ¶¶ 3-7. The Minnesota Supreme Court, in discussing a defendant school district's insurance policy, recently stated that "the Minnesota School Board Association Insurance Trust (MSBAIT) [is] a self-insurance pool specifically authorized by Minnesota Statutes § 471.98, subd. 1 (2000)." Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 583 (Minn. 2003). Other courts when referencing MSBAIT have also described the organization as a self-insurance trust. Minn. Sch. Bds. Ass'n Ins. Trust v. Employers Ins. of Wausau, 331 F.3d 579, 580 (8th Cir. 2003) (introducing MSBAIT as "a state-created self-insurance pool"); Indep. Sch. Dist. 833 v. Bor-son Constr., Inc., 631 N.W.2d 437, 442 (Minn. Ct. App. 2001) (noting that MSBAIT "provides a pooled self-insurance plan") (Hanson, J. dissenting). This evidence establishes that MSBAIT

and LMCIT are self-insurance pools formed in accordance with Minnesota law. Because Defendants are participants in self-insurance pools, as authorized by Minnesota law, their respective procurement of insurance protection in excess of $300,000 does not waive the applicable statutory liability limit unless the coverage expressly provides for such waiver. Minn. Stat. § 471.98, subd. 1.

Not only are the policies devoid of any explicit waiver of the limits of Minn. Stat. § 466.04, subd. 1, but the inclusion of unambiguous non-waiver language is dispositive of the issue of liability limits even if Defendants were not considered self-insured. The City's policy directly states several times that the City of Crookston was not electing to waive the statutory limits of its financial liability to tort claimants. LMCIT Policy Tabs 2, 3; Waiver Form (Hennen Aff. Ex. D). Specifically because it chose this non-waiver coverage, the City received a credit toward its premium charges. See LMCIT Policy Tab 1. The $1,000,000 policy limit therefore applies only to claims other than those where recovery is limited by Minnesota law.[1]

Accordingly, the amount of the policies in excess of $300,000 does not cover Plaintiffs' claim, a state tort cause of action, rendering the waiver clause of section 466.06 invoked by Plaintiffs inapplicable in this case. Minn. Stat. § 466.06 (stating that excess coverage operates as a waiver "of the limits of governmental liability under section 466.04 only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim") (emphasis added); see

---

[1] Municipalities are motivated to obtain coverage in amounts greater than the statutory liability limit to protect themselves from federal claims, to which the state law damage limitations do not apply. This concept is also evident in the Liability Coverage summary of the District's policy, where it states that the District is "protected up to the liability limits imposed by statute not to exceed the above stated amount [$1,000,000] per occurrence." MSBAIT Plan p. IP-2 (emphasis added).

also Hammer v. City of Osage Beach, 318 F.3d 832, 841 (8th Cir. 2003) (holding non-waiver clause in liability policy defeated application of statute that provided for waiver of sovereign immunity by purchase of insurance). As members of self-insurance pools authorized by state statute, Defendants must affirmatively waive the monetary protections of Minnesota Statutes Section 466.04, which neither has done. Furthermore, both the LMCIT and the MSBAIT policies contain language that coverage beyond the amount of the statutory limits of liability is available only in the event of a claim to which these damage caps do not apply. Therefore, Plaintiffs' Motion for Partial Summary Judgment that Defendants waived their limits of tort liability is denied and the portions of Defendants' Motions regarding waiver are granted.

**2. Defendants' Motions for Partial Summary Judgment**

In their Motions for Partial Summary Judgment, Defendants argue that the municipal tort liability statute limits their combined exposure to damages to $300,000 because in maintaining the swimming pool, the City and the District were acting through the Joint Board, itself defined as a municipality. They argue that by operating as a joint enterprise they are not individually subject to the statutory damage cap. Plaintiffs assert the Eighth Circuit ruling in this case establishes that each Defendant may be independently liable for Reimer's injuries due to their shared responsibility for the Joint Board.

In its decision on appeal, the Eighth Circuit found genuine issues of material fact as to the parties' awareness of the danger posed by the corroded boiler nipple and, resultantly, whether or not the District and the City had a duty to warn Reimer of the risk posed by the condition of the boiler. Reimer v. City of Crookston, 326 F.3d 957, 961-965 (8th Cir. 2003). In so holding, the court explicitly stated that "[a]lthough the School District owned the pool building and the boiler,

a written agreement with the City supports a finding, for summary judgment purposes, that the parties jointly operated the facilities and jointly shared the indices and liabilities of ownership." Id. at 962. After discussing Nelson's role in the events surrounding the accident, the court iterated, "[b]ecause we deem the City joint owner-operators of the pool facilities, our conclusion on this issue applies equally to the City." Id. at 965.

The statute prescribing the liability limitation relevant to the City and the District provides that liability "of any municipality on any claim . . . shall not exceed" $300,000 to any claimant. Minn. Stat. § 466.04, subd. 1 (emphasis added). Thus, this text speaks to the limit on damages that may be assessed against any single defendant municipality rather than a limit on the ultimate recovery a plaintiff may collect. Although the Joint Board is considered a municipality in and of itself, it is not a Defendant in this action and existed only by virtue of the Joint Powers Agreement between the City and the District. Further, the statutory authority under which the Joint Board was created is silent regarding preclusion of independent tort liability of separate governmental units party to the cooperative exercise of powers. Minn. Stat. § 471.59. Defendants have not proffered any Minnesota case law in support of such preclusion. Defendants specifically established the Joint Board as a shared undertaking to manage and operate the swimming pool, and the Eighth Circuit's summary judgment ruling establishes that both members of this joint operation are potentially liable to Plaintiffs. Reimer, 326 F.3d at 962, 965. Defendants' Motion for Partial Summary Judgment is therefore denied as to the request for a declaration that only one $300,000 liability limit applies to Reimer's claims. Each Defendant's exposure for damages is $300,000.

**B. The City's Motion for Summary Judgment on its Cross-Claim[2]**

The City additionally seeks a declaratory judgment against the District, arguing that contractual and equitable principles require indemnity for any liability assessed on the City. The District asserts that without an explicit agreement to indemnify, the two Defendants each bear legal responsibility for the acts of the Joint Board and that the City's only recourse is an action for contribution based on the comparative degree of fault of each party.

As a general rule, a joint tortfeasor is independently liable and will not be entitled to indemnity from another joint tortfeasor. Tolbert v. Gerber Indus., Inc., 255 N.W.2d 362, 366-68 (Minn. 1977). However, in certain circumstances a contractual relationship or an implied legal duty "requires one party to reimburse the other entirely." Hendrickson v. Minn. Power & Light Co., 104 N.W.2d 843, 847 (Minn. 1960), overruled in part by Tolbert, 255 N.W.2d at 368-68, 368 n.11; see also Union Pac. R.R. v. Reilly Indus., 215 F.3d 830, 841 (8th Cir. 2000).

The City asserts that the June 20, 1996 Financial Responsibility Statement includes a contractual undertaking by the District to indemnify the City in a factual context such as the instant case. Rengel Aff. Ex. C. It argues that this document, adopted by the Joint Board

---

[2] Because the parties have submitted and argued this issue the Court will address indemnification on the Cross-Claim in the instant Order. However, the Eighth Circuit opinion in this case states both Defendants are potential joint tortfeasors and that disputed fact issues remain as to their liability to Plaintiffs. Therefore, allegations regarding contribution rights are better analyzed after the factual record is further developed and fault is apportioned among the Defendants and Reimer. The parties may reassert their positions on equitable indemnification at such time. See Blomgren v. Marshall Mgmt. Servs., Inc., 483 N.W.2d 504, 506 n.4 (Minn. Ct. App. 1992) (expressing that a "contribution/indemnity claim is considered contingent upon the outcome of the original action").

pursuant to its authority under the Joint Powers Agreement,[3] assigns care and insurance of the boiler solely to the District and therefore renders only the District liable for Reimer's injuries. Id. The Financial Responsibility Statement provides in pertinent part:

> It is generally understood and agreed that the school district is financially responsible for: . . . 3) providing routine maintenance and boiler checks; 4) cleaning and inspecting the boiler; 5) providing services contracts for heating and controls; . . . and 7) assuming the cost of property and liability insurance.

Id. para. 2. It then specifies which pool-related expenses are the financial responsibility of the Joint Board. Id. para. 3.

The Financial Responsibility Statement and the Joint Powers Agreement contain no mention of liability to third parties for acts of the Joint Board and do not discuss indemnity. Rengel Aff. Exs. B, C. As such, no contractual right to indemnification exists for either party. See Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc., 281 N.W.2d 838, 842 (Minn. 1979) (contractual liability release of joint tortfeasor requires "an express provision in the contract to indemnify"); see also Nat'l Hydro Sys. v. M.A. Mortenson Co., 529 N.W.2d 690, 694 (Minn. 1995) (terms of indemnity agreements must be clear and unequivocal).

The City argues alternatively that based on the respective roles of the parties outlined in the Financial Responsibility Statement, rules of equitable indemnification mandate a finding that the District should be solely responsible for any damages assessed in this case. It contends that

---

[3] As discussed, the Joint Powers Agreement established the Joint Board and provides for its powers, enabling it to, among many other things, "[d]evelop and implement By-Laws, rules and regulations not inconsistent with the terms of this Agreement governing [the Joint Board's] operation, encouraging a wide variety of activities, and encouraging a wide variety of people to use the programs, facilities, and equipment available." Rengel Aff. Ex. B. ¶¶ 2(a), 2(b)(1)(i). The agreement further confers on the Joint Board the ability to "[p]erform all necessary functions and do all things necessary or desirable to fulfill the purposes of this Agreement." Id. ¶ 2(b)(1)(k).

because the District was exclusively responsible for financing the boiler, and Nelson, the chief operator, was exclusively a district employee, fairness demands the District bear all legal liability.

Without an explicit agreement to indemnify, a joint tortfeasor may only recover full reimbursement from another joint tortfeasor where the party seeking indemnification incurred liability derivatively or vicariously or at the direction and in the interest of the other, or because of "a breach of duty owed to him by the one sought to be charged." Blomgren v. Marshall Mgmt. Servs., Inc., 482 N.W.2d 504, 506 (Minn. Ct. App. 1992) (quoting Hendrickson, 104 N.W.2d at 848). The rationale of these so-called "Hendrickson rules" is to cure the inequities created by operation of tort law that occur when one party incurs legal liability for another's culpable conduct, despite the absence of "personal fault." Tolbert, 255 N.W.2d at 366. The Eighth Circuit has found the City "jointly shared the indices and liabilities of ownership" with the District by virtue of the Joint Powers Agreement and thus owed Reimer a duty of care.[4] Reimer, 326 F.3d at 962, 965. All parties continue to dispute the level of involvement and liability

[4] The City's reliance on Huver v. Opatz, 392 N.W.2d 237 (Minn. 1986), involving a division of responsibility agreement under the Minnesota Town Roads statute, is therefore inapposite. In Huver, the two municipalities expressly divided by contract their responsibility for maintenance of different portions of a township road, thereby modifying their previous agreement to share all expenses, as well as their common law duty of responsibility for only the area of the road within their respective boundaries. Id. at 238-39 (citing Minn. Stat. § 164.12, subds. 2, 3). Because of the explicit contractual undertaking by one party of full financial responsibility for maintenance of the section of the road on which the accident occurred, the Court found the other township owed no duty to the plaintiffs and therefore could not be liable in negligence. By contrast, here the City and the District formed an express agreement to jointly operate the pool facilities, creating shared duties to Plaintiffs. Reimer, 326 F.3d at 962, 965. The sub-agreement of the Joint Board to delegate financial responsibility for boiler maintenance to the District is not analogous to the contract between the townships in Huver that was for the single purpose of dividing the cost of road maintenance, as required by the "Road on a Town Line" statute. See Minn. Stat. § 164.12.

occasioned by actions of Stromberg, an employee of the Joint Board whose salary and benefits were largely funded by the City.[5] Further, even if Stromberg's contact with the boiler was only to assist Nelson and at his direction, the District maintained and operated the boiler on behalf of the Joint Powers Board, and therefore, the City. See Joint Powers Agreement; Financial Responsibility Statement; Stromberg Dep. at 18-19, 23-24, 43; Nelson Dep. at 226-27; see also Larson v. Linwood Township, CX-99-813, 1999 WL 1059657, at *2 (Minn. Ct. App. Nov. 23, 1999) (holding township that was part of a joint powers agreement subject to suit for damage caused by work performed and paid for solely by another governmental unit because the work was done pursuant to the joint powers agreement, and thus "on behalf of each of the parties to the agreement") (unpublished decision). Accordingly, the law of the case, the nature of the Joint Powers Agreement and the concomitant relationship between the parties establish that the City is not entitled to indemnification from the District as a matter of law at this juncture. Reimer, 326 F.3d at 962, 965; see generally Larson, 1999 WL 105657, at *1-3. The City may, however, in the event of a jury finding for Plaintiffs, seek contribution based upon the relative proportions of fault attributed to each. See Blomgren, 483 N.W.2d at 506.

[5] While Nelson's role in the events surrounding the accident is essentially uncontroverted, Plaintiffs and the District maintain that Stromberg may also have had a duty to warn Reimer of the condition of the boiler, and the City argues that the minimal contact Stromberg had with the boiler was at the request of Nelson.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment [Docket No. 103] is **DENIED**;

2. Defendant Crookston Public School District #593's Motion for Partial Summary Judgment [Docket No. 111] is **DENIED** as to the request for a declaration that only one $300,000 liability limit applies and **GRANTED** as to non-waiver of the liability limits of Minn. Stat. § 466.04, subd. 1(a)(1);

3. Defendant City of Crookston's Motion for Partial Summary Judgment [Docket No. 106] is **DENIED** as to the request for a declaration that only one $300,000 liability limit applies and **GRANTED** as to non-waiver of the liability limits of Minn. Stat. § 466.04, subd. 1(a)(1); and

4. Defendant City of Crookston's Motion for Summary Judgment on its Cross-Claim Against Crookston Public School District #593 [Docket Nos. 93, 101] is **DENIED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: November 14, 2003

For Immediate Release
October 30, 2003

# PRESS RELEASE

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
300 South Fourth Street, Suite 202, Minneapolis, Minnesota
Contact: Richard D. Sletten, Clerk, (612) 664-5026

## FEDERAL COURT AMENDS LOCAL PRACTICE RULES

The U.S. District Court for the District of Minnesota announces the approval, of amendments to its local rules of practice recommended by the Court's Federal Practice Committee chaired by Minneapolis Attorney Jeff Keyes of the Briggs and Morgan law firm.

Local Rules 67.1 and 83.11 amendments:

### LR 67.1 MONEY PAID INTO COURT

Unless otherwise ordered by the Court, all monies coming into the registry of this Court shall be deposited in an interest bearing account in a depository approved by the Treasurer of the United States, subject to withdrawl by checks drawn by the Clerk of Court pursuant to orders of the Court. The Clerk of Court shall deduct from the income earned on the investment a registry fee, as set by the Director of the Administrative Office of the United States Courts. The fee will be deducted when funds are withdrawn and distributed. For further registry fee information, refer to the Guide to Judiciary Policy and Procedures Chapter VII, Financial Management, Part I, Registry Funds.

### LR 83.11 DIVISIONS, OFFICES OF THE CLERK, CALENDARS

(a) Divisions. The State of Minnesota constitutes one judicial district, divided into six divisions. Cases in this District are assigned to particular divisions and particular judges pursuant to the Order for Assignment of Cases that has been adopted by the Judges of the District Court. The Order for Assignment of Cases may be modified from time to time as the District Court Judges see fit.

(b) Offices of the Clerk. The Clerk of Court maintains offices in St. Paul, Minneapolis, and Duluth. The St. Paul, Minneapolis and Duluth offices are open from 8:00 a.m. to 5:00 p.m. All offices are open Monday through Friday, with the following exceptions: New Year's Day; Martin Luther King, Jr.'s Birthday; President's Day; Memorial Day; Independence Day; Labor Day; Columbus Day; Veterans Day; Thanksgiving Day; and Christmas Day.

The files for matters pending before the Court are maintained in the office in the division to which the case is assigned. However, papers relative to any case may be filed in any office.

(c) Calendars. The Court operates on an individual calendar system. Judges in active service are assigned and assume responsibility for their proportionate share of the total cases filed in the district. Inquiries as to motions, probable trial date, or other matters having to do with a particular case may be addressed to the deputy clerk serving as calendar clerk for the Judge to whom the case has been assigned.