# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 04-3233

---

| | | |
|---|---|---|
| Robert Reimer and Susan Reimer, individually and as husband and wife, | * | |
| | * | |
| Plaintiffs - Appellants, | * | 00cv370 ADM/RLE |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| City of Crookston, | * | |
| | * | |
| Defendant - Appellee | * | |
| | * | |
| Crookston Public School District #593, Johnson Controls, Inc., Kriss Premium Products, Inc., | * | |
| | * | |
| Defendants. | * | |

---

Submitted: June 22, 2005
Filed: August 30, 2005

---

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

---

MELLOY, Circuit Judge.

SCANNED
NOV - 8 2005
U.S. DISTRICT COURT MPLS

Robert Reimer, a boiler repairman, was severely injured by steam and scalding water from a boiler. The boiler was in northern Minnesota at a pool jointly operated by the City of Crookston ("City") and Crookston Public School District #593 ("School District"). Following a trial, the jury apportioned fault to the School District and Mr. Reimer, but apportioned no fault to the City. Mr. Reimer and his wife, Susan Reimer, appeal, arguing that the district court improperly instructed the jury regarding the issue of joint enterprise liability. The Reimers also argue that, under their requested instruction, joint enterprise liability may be decided as a matter of law. We agree, reverse, and direct entry of judgment against the City in favor of the plaintiffs.

I.

The School District owned and operated a swimming pool facility that included a building and boiler. The School District found pool operations prohibitively expensive and closed the pool. The City then approached the School District, and entered into a Joint Powers Agreement under which the City and the School District created a Joint Recreation and Education Board (the "Joint Board" or "Joint Recreation Board") to operate the pool. The Joint Recreation Board was a "joint powers board" under Minn. Stat. § 471.59.

The School District and the City also executed a related Financial Responsibility Statement which provided, "The Joint Recreation and Education Board is the governing structure designed to manage and oversee the operation of the Crookston Swimming Pool. This facility is used primarily by Crookston area residents for recreational swimming and secondarily by the public school for physical education units on swimming." The Statement clarified that the City and School District would share the costs of pool operations on an equitable basis. The Statement provided specifically that the School District would bear the cost of building and grounds maintenance, including "routine maintenance and boiler

checks," and that the Joint Board would bear the costs of personnel, utilities, supplies, chemicals, filters, and custodial services. Finally, the Statement provided that:

> Major capital expenses associated with maintenance, repair, and replacement of items such as lights, pumps, clocks, air circulation system, water filtration system, plumbing, pool tank surface, etc, is the responsibility of the joint board since the expense is caused by the ongoing, day-to-day operation of the facility which is shared jointly by Crookston residents and students.

After the School District and City formed the Joint Board and operated the pool jointly for a period of about ten years, the boiler at the pool needed to be repaired. The School District contacted Mr. Reimer's employer, and Mr. Reimer came to Crookston to inspect the boiler. While positioning himself near the boiler, Mr. Reimer accidentally struck and dislodged a corroded component, causing the boiler to release steam and scalding water. He suffered serious burns over sixty-seven percent of his body and incurred medical expenses that exceeded $700,000 as of the time of trial. It is undisputed that the accident rendered Mr. Reimer unable to work.

Mr. Reimer and his wife, Susan Reimer, sued the School District, the City, a maintenance company, and a chemical supply company. The Reimers later moved to add the Joint Board as a party. At a hearing to address the Reimers' motion, the parties entered into a written stipulation under which all parties agreed that the Joint Board was not an indispensable party, no party could bring a motion to dismiss for failure to name the Joint Board as an indispensable party, and "[t]he Joint Recreation and Education Board's liability in this action, if any, is the responsibility of either Crookston Public School District No. 593, the City of Crookston, or both Crookston Public School District No. 593 and the City of Crookston."

All defendants moved for summary judgment. There was evidence that certain employees of the School District and maintenance service company had specific

knowledge of the corroded component and had not warned Mr. Reimer of its condition. The district court granted summary judgment, finding that none of the defendants were obliged to warn Mr. Reimer because none of the defendants owed Mr. Reimer a duty of care. The district court held in the alternative that the boiler comprised an open and obvious danger and that Mr. Reimer assumed the risk of his injuries.

The Reimers appealed. On appeal, we held that material questions of fact precluded a finding as to whether the City and/or School District owed Mr. Reimer a duty of care. Reimer v. City of Crookston, 326 F.3d 957, 965 (8th Cir. 2003). We also held that material questions of fact precluded a finding that Mr. Reimer had accepted the risk of his injuries. Id. at 969-70. We affirmed the district court's dismissal of the maintenance service and chemical supply companies based on the finding that these two companies owed no duty to Mr. Reimer. Id. at 965-66.

The case then proceeded to trial. Because the School District owned the boiler, and, in fact, exercised control over the boiler, the City's only potential liability was vicarious liability that arose by virtue of its participation in a joint enterprise with the School District. The Reimers requested a special interrogatory that would have asked the jury to decide whether a joint enterprise existed to operate the pool. The district court did not use the Reimers' requested instruction. The City requested—and over the Reimers' objection, the district court adopted—a special interrogatory that asked the jury to decide whether a joint enterprise existed specifically for the purpose of operating the boiler. The City's requested interrogatory read as follows, "Is the overall and routine maintenance, inspection or repair of the boiler at the swimming pool a joint enterprise between the City of Crookston and Crookston Public School District # 593?" The jury answered "No."

In addition to finding that no joint enterprise existed relating specifically to the boiler, the jury found the School District 77% at fault and Mr. Reimer 23% at fault.

The jury found that Mr. and Mrs. Reimer together were entitled to damages of over $12 million.

By statute, certain governmental entities in Minnesota enjoy the protection of a $300,000 liability cap on damages in tort cases. Minn. Stat. § 466.04. The School District and the City both qualify for protection under this statutory section. Accordingly, although the jury awarded the Reimers over $12 million in damages, the School District is only liable for $300,000. Given the severity of Mr. Reimer's injuries, the City stipulated at an earlier stage of these proceedings that, if found liable, it would pay the statutory maximum of $300,000.

On appeal, the Reimers do not argue that the City itself was negligent or in any manner directly responsible for Mr. Reimer's injuries. They argue only that the City and the School District, as collaborators in a joint enterprise to operate the pool, are jointly liable for damages arising out of the joint enterprise. They characterize the district court's limitation of the joint enterprise special interrogatory (to reference only the boiler and not the entire pool operation) as an abuse of discretion. The Reimers also characterize joint enterprise liability under Minnesota law as sufficiently broad in scope to make enterprise participants liable for one another's acts even if the enterprise delegated responsibility for the injury-causing acts or devices to only one of the participants.

The City argues that the jury instruction was proper because the evidence at trial and the Reimers' theory of the case all focused on knowledge, operation, and control of the boiler. The City also argues that joint enterprise liability under Minnesota law is not as expansive as urged by the Reimers. In this regard, the City argues that it cannot be held accountable for liability that arises from a task delegated specifically to the School District. As a result, the City argues that the limited instruction was appropriate both as to Minnesota law and as to the facts that the parties presented to the jury at trial.

In the alternative, the City argues that the Reimers waived the option of seeking damages from the City based on a theory of joint enterprise liability when they agreed not to bring the Joint Board into the suit as a party. The City argues that this was a tactical decision by the Reimers so that they could seek two separate statutory liability caps, one from the School District and one from the City, rather than one statutory liability cap from the Joint Board. This argument rests on two theories. The first is that damages arising from activities by a statutory Joint Powers Board under Minn. Stat. § 471.59, are subject to one liability cap applied to a Joint Powers Board as a distinct governmental entity entitled to protection under the statute. The second theory is that a single statutory liability cap for a Joint Powers Board acts as an umbrella for all liability arising under the joint enterprise such that member entities are not exposed to their respective, individual liability cap limits. We address the jury instruction issue and the application of Minnesota's statutory liability cap below.

## II.

### A. Jury Instructions

We review jury instructions, including special interrogatories, for abuse of discretion. Wilson v. Brinker Int'l, Inc., 382 F.3d 765, 771 (8th Cir. 2004); Lampkins v. Thompson, 337 F.3d 1009, 1015 (8th Cir. 2003). "In reviewing a substantive challenge to jury instructions, the pertinent query is whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Horstmyer v. Black & Decker (U.S.), Inc., 151 F.3d 765, 771 (8th Cir. 1998) (internal quotation marks omitted). Jury instructions should be "supported by competent evidence in the record," and jury instructions are not required "to instruct on issues that do not find support in the record." Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002).

We believe that the Reimers' requested instruction accurately and fairly characterized Minnesota law and that the defendants' requested instruction imposed limits not supported by Minnesota law. The issue to be decided in this case was whether a joint enterprise existed through which liability could be imputed to the City. See Beehner v. Cragun Corp., 636 N.W.2d 821, 832 (Minn. Ct. App. 2001) ("Courts apply the joint venture or joint enterprise doctrine 'when necessary to impute negligence between two entities that otherwise have no legal relationship.'") (quoting Stelling v. Hanson Silo, Co., 563 N.W.2d 286, 290 (Minn. Ct. App. 1997)). Under the applicable Minnesota law, parties to a joint enterprise or joint venture remain jointly liable for the acts of coventurers even though the enterprise or venture allocates responsibility and control over the device that caused harm to only one of the participants. See Walton v. Fujita Tourist Enters., 380 N.W.2d 198, 202 (Minn. Ct. App. 1986) (finding joint liability where a joint enterprise had delegated responsibility to one participant, and stating, "For the same reasons that led them to become joint venturers, Pacific Delight and Northwest delegated control of specific aspects of the tours to each other. *This division of responsibilities does not operate to negate the existence of a joint venture.*") (emphasis added).

This is the rule because the right of control rather than the exercise of actual control determines liability. See Krengel v. Midwest Auto. Photo, Inc., 203 N.W.2d 841, 846-47 (Minn. 1973) ("In a joint adventure, the individual defendants are jointly liable as a unit because of their mutual undertaking for a common purpose and their right of direction and control over the enterprise, *even though there is no actual physical control or such control was never exercised.*") (emphasis added); Rehnberg v. Minnesota Homes, Inc., 252 N.W.2d 454, 457 (Minn. 1952) ("Joint proprietorship and control—there must be a proprietary interest and *right of mutual control* over the subject matter of the property engaged therein") (emphasis added). Minnesota's courts have stated that when parties to a joint enterprise delegate authority over a particular device or action, the fact of delegation proves that the joint enterprise had the necessary right of control. Roberts v. Donaldson, 149 N.W.2d 401, 407 (Minn.

1967) ("Patently, the right must exist before it can be delegated or surrendered."). Here, the City argues that control over the boiler was delegated to the School District. Under Roberts, rather than proving that the City is absolved of liability, the fact of this delegation demonstrates that the Joint Board, in fact, had the necessary right of control.

Walton provides valuable guidance for resolution of the present case. In Walton, the parties to a joint enterprise specifically delegated certain duties to one another, yet the joint adventurers shared liability for damages arising from one party's execution of a delegated duty. Walton, 380 N.W.2d at 203. The purpose of the enterprise was to conduct travel tours. Id. at 200. One party was responsible for air travel, and the other was responsible for on-the-ground arrangements. Id. Notwithstanding this clear delegation of duties, the Minnesota Court of Appeals held both members of the joint enterprise liable after a traveler was injured on the ground during a tour. Id. at 202-03. The court described the effect of a delegation of responsibility as follows:

> This does not mean that Northwest was expected to inspect every hotel and tourist attraction that tour members would visit; that duty was primarily delegated to Pacific Delight and its agent, Fujita Tourist Enterprises. *When a coventurer breaches its delegated duty, however, liability incurred by the breach is the joint responsibility of all the coventurers.*

Id. at 203 (emphasis added).

Based on Krengel and Walton, then, it was not necessary as a matter of Minnesota law for the jury in the present case to find a joint enterprise specific to the boiler. It was only necessary for the jury to find a joint enterprise sufficient in scope to include a right of control over the boiler by the joint enterprise. Accordingly, the use of an instruction that limited the scope of the joint enterprise to focus only on the

device that caused harm rather than the broader subject of the parties' agreement did not "fairly and adequately [submit] the issues in the case to the jury." Horstmyer, 151 F.3d at 771.

Regarding a relationship between the Reimers' proposed instructions and the facts and arguments presented to the jury at trial, we also believe that the instruction should have addressed a joint enterprise concerning the pool and not just the boiler. It was and is undisputed that the School District and City entered a joint enterprise to operate the pool. There is no allegation that there was a separate agreement to form some other joint enterprise. The agreement to form the Joint Board was before the jury. The related Financial Responsibility Statement was also before the jury. These documents unambiguously addressed operation of the pool and allocated responsibility over the boiler to the School District. As a practical consideration, it is beyond dispute that a swimming pool in northern Minnesota is largely decorative for a large portion of the year if not provided with some form of heat. It is therefore disingenuous for the defendants to argue that all the facts at trial related solely to the boiler and that none of the facts before the jury related to operation of the pool. Accordingly, the facts before the jury, as well as Minnesota law regarding joint enterprise liability, demanded an instruction as to a joint enterprise aimed broadly at the operation of the pool.

Because the existence of a joint enterprise to operate the pool is not genuinely in dispute, we need not remand for a jury finding under the Reimers' requested instruction. See Krengel, 203 N.W.2d at 846 (holding that although the question of whether a joint venture existed should have been submitted to the jury, undisputed facts permitted a finding of a joint venture as a matter of law).[1] Rather, we hold as

---

[1]Minnesota cases characterize the existence of a joint enterprise as both a question of law, and as a question of fact. Compare Beehner, 636 N.W.2d at 832 ("Whether a joint venture or a joint enterprise exists is a question of law.") with Hansen v. St. Paul Metro Treatment Ctr., Inc., 609 N.W.2d 625, 627 (Minn. Ct. App.

a matter of law that a joint enterprise existed and that the School District and City, as members to that joint enterprise, bear joint responsibility for the damages allocated by the jury to the School District.

B. Statutory Liability Caps

Turning to the application of Minnesota's statutory liability caps, the City argues that the Board was a separate municipal entity under Minnesota law and that the Reimers cannot obtain two statutory liability caps under a theory of joint enterprise liability because the joint enterprise itself is only liable for one cap. We reject these arguments.

First, Greater Morrison Sanitary Landfill, SW-15, 435 N.W.2d 92, 96-97 (Minn. Ct. App. 1989), makes clear that Minnesota law is unsettled regarding the nature of joint powers boards created under the Joint Exercise of Powers Act, Minn. Stat. § 471.59. In Greater Morrison Sanitary Landfill, certain towns and cities had formed a joint powers board under Minn. Stat. § 471.59 to operate a landfill. Some of the members withdrew from the board before a landfill operated by the board incurred closing costs. The member cities that had withdrawn from the board attempted to avoid liability for the closing costs. Minnesota's own courts identified, but avoided deciding the issue of how precisely to characterize a joint powers board for the purpose of imputing liability to its members:

---

2000) ("Whether a joint venture exists has been described as a question for the fact-finder to determine."). We need not attempt to resolve this matter of state law because, even if the existence of a joint enterprise is a question of fact, there is no material dispute in this case regarding the existence of an enterprise to operate the pool. Accordingly, on the facts of this case, we may decide the issue as matter of law.

> It is not clear whether a separate legal entity is created when governmental units act pursuant to the Joint Exercise of Powers Act, Minn. Stat. § 471.59. Neither is it clear, if an entity indeed is created, whether that entity has the attributes of a corporation or partnership, or is simply an agent acting on behalf of the principal member governmental units.
>
> We believe that the entity, if any, created through the joint exercise of powers is in the nature of hybrid, potentially possessing attributes of all the aforementioned legal relationships. The precise nature of any one such entity, however, must be determined on a case by case basis upon a thorough analysis of the purpose for and responsibilities of the entity.
>
> . . .
>
> We decline to determine whether the relationship between [the withdrawn board members] and the board is more aptly characterized as one of principal-agent or partnership. Suffice to say, under either characterization, [the withdrawn Board members] are not necessarily absolved of liability. If the Landfill Board is merely an agent, [the members'] liability, as principals, cannot be disputed. If there is a partnership, then [the members] are individually liable for all debts and obligations incurred prior to dissolution.

Id., 435 N.W.2d at 96-97.

The City not only fails to acknowledge this case, but actually declares the opposite to be true, citing only Section 471.59 and claiming that the Board in this case is a separate entity, like a corporation, that can limit the underlying members' liability. If, following Greater Morrison Sanitary Landfill, members of a Section 471.59 joint powers board can be held jointly responsible for liabilities incurred by the activities of the board, then a joint powers board is to be treated like any other joint enterprise or joint venture under Minnesota law. As suggested in Greater Morrison Sanitary Landfill, this treatment is akin to a principal-agent or partnership relationship. Under such models, the Joint Board in the present case is not a separate, limited liability entity entitled to its own, separate liability cap. Beehner, 636 N.W.2d

at 832 ("Courts apply the joint venture or joint enterprise doctrine 'when necessary to impute negligence between two entities that otherwise have no legal relationship.'") (quoting Stelling, 563 N.W.2d at 290).

Under a theory of partnership or agency, without the protection of a separate, limited liability entity, we believe that the liability caps to apply should be the respective liability caps of the underlying principals or partners. This result makes sense because regardless of whether a municipal entity incurs liability through its individual acts or through the acts of its partners or agents, it should still be entitled to limit its own liability by virtue of its own liability cap. See Minn. Stat. § 466.04. Further, we find no suggestion in the text or history of the statute to suggest that Minnesota's legislature intended to extend the benefit of Section 466.04 to a broader class of entities simply because those entities are comprised of, or choose to enter into ventures with, protected entities. Greater Morrison Sanitary Landfill does not answer this exact question, and, in fact, it deals with an arguably unique situation involving lingering liability for environmental clean-ups. However, it strongly suggests that the Joint Board itself is not entitled to recognition as a limited liability entity and that the Reimers should be able to demand two statutory liability caps (one from each "partner" or "principal").

Another Minnesota case, Dang v. St. Paul Ramsey Medical Ctr., Inc., 490 N.W.2d 653 (Minn. Ct. App. 1992), also supports this result. Dang involved a judgment against a hospital and a group of physicians. The hospital was a municipal entity subject to the maximum liability cap of Section 466.04. The court determined that a joint enterprise existed between the hospital and the physicians, but that the joint enterprise itself and its member physicians were not subject to the protection of Section 466.04. Dang, 490 N.W.2d at 658. Accordingly, the hospital and the physicians were jointly liable for the damages, but the hospital *and only the hospital* was entitled to limit its contribution by virtue of the statutory cap. Id. Although the joint enterprise in Dang was not a joint powers board under Minn. Stat. § 471.59,

Dang is instructive on the nature of the liability caps—they are personal to the parties being asked to satisfy the judgment, not general umbrellas that lie over the top of an enterprise in which a protected party chooses to participate.

Finally, the City argues that the Reimers waived their right to seek the full amount of the statutory liability caps from more than one entity when they entered the stipulation and elected not to demand joinder of the Joint Board as a party. We find this argument to be without merit. The stipulation expressly stated that the Board was not an indispensable party and that any liability would be the responsibility of the City, the School Board, or both. Our current holding imposes liability on both, as clearly permitted under the parties' stipulation.

Because we hold that the City shares in the liability apportioned to the School District, because damages far exceed the statutory liability caps, and because the City earlier stipulated that it would pay the full liability cap if found at all liable, we remand for entry of judgment against the City.

---



A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans